85 N.Y.2d 209 (1995)
647 N.E.2d 1317
623 N.Y.S.2d 809
In the Matter of Thomas J. Scotto, as President of the Detectives' Endowment Association, et al., Respondents,
v.
David N. Dinkins, as Mayor of the City of New York, et al., Appellants.
Court of Appeals of the State of New York.
Argued November 29, 1994
Decided February 23, 1995.
Paul A. Crotty, Corporation Counsel of New York City (Janet L. Zaleon, Barry P. Schwartz and Bruce Rosenbaum of counsel), for appellants.
Vincent D. McDonnell, New York City, and O'Dwyer & Bernstien (Brian O'Dwyer and Gary Silverman of counsel), for respondents.
Donna M. C. Giliberto, Albany, for the New York State Conference of Mayors and Municipal Officials, amicus curiae.
Judges TITONE, SMITH, LEVINE and CIPARICK concur with Judge BELLACOSA; Judge SIMONS dissents in a separate opinion in which Chief Judge KAYE concurs.
*212 BELLACOSA, J.
The purely statutory construction issue in this CPLR article 78 proceeding was resolved by Supreme Court granting the petition. The Appellate Division affirmed and certified to us the question of the propriety of its ruling. The affirmed judgment directed appellants-respondents to comply with the appointment directive of section 14-103 (b) (2) of the Administrative Code of the City of New York (as amended by L 1990, ch 755) by officially designating petitioners as detectives. Petitioners are police officers performing duties in four different categories of investigative functions. The judgment also declared that New York City Police Department Interim Order 61 and related departmental directives, restricting the applicability of section 14-103 (b) (2), are null and void and enjoined their implementation.
The dispositive inquiry devolves to whether the Legislature, in enacting the 1990 amendment to section 14-103 (b) (2) of the Administrative Code, intended to provide the Police Commissioner of the New York City Police Department with the discretion to define the statute's operative term and, by so doing, to countermand or curtail the remedial sweep of the statutory amendment itself. We conclude that the Legislature's intent was to eliminate the very discretion which the *213 Commissioner now seeks to reclaim. Consequently, the order of the Appellate Division upholding the invalidation of the Department's contrary directives should be affirmed and the certified question answered in the affirmative.
As amended (L 1990, ch 755), section 14-103 (b) (2) of the Administrative Code directs:
"Any person who has received permanent appointment as a police officer and is temporarily assigned to perform the duties of a detective shall, whenever such assignment exceeds eighteen months in duration, be appointed as a detective and receive the compensation ordinarily paid to a detective performing such duties" (emphasis added).
Thus, the provision, by its terms, mandates that any police officer who has been temporarily assigned to perform the "duties of a detective" for more than 18 months "be appointed as a detective" and receive commensurate compensation, rank, and other benefits. This provision was enacted to remedy morale and inequity problems resulting from indefinitely assigning officers to detective/investigative duties without providing proportionate benefits and security (Mem in Support of Legislation, Bill Jacket, L 1990, ch 755; see also, 1988 NY Legis Ann, at 359, 360; 1985 NY Legis Ann, at 348, 349 [both discussing intention behind similarly structured precursor bills which were vetoed]).
To countermand this amendment, the Police Department of the City of New York issued Interim Order 61, which restricted the coverage of chapter 755 to only certain specified types of investigative assignments. Subsequently, the Department issued Interim Order 60-3, applicable to certain other investigative tracks, which provided for assignments as detectives, but only after more than 26 months of service in those temporary assignments.
The substance of appellants' argument, adopted by the dissenters, is that the meaning of the term "duties of a detective" is not plain on the face of the statute (see, Administrative Code § 14-103 [b] [2]), and that, therefore, the Police Commissioner retains the discretion to reasonably interpret the phrase and determine what investigative duties fall within the statute's protective mandate (see, Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 N.Y.2d 353, 359-360). They point to the historically *214 broad discretion that the Commissioner has been accorded in the area of designating police officers to the status of detective (see, Administrative Code § 14-103 [a], [b]; see generally, McGowan v Mayor of City of N. Y., 53 N.Y.2d 86, 94, 95; People ex rel. O'Connor v Girvin, 227 N.Y. 392, 394, 396). On this basis, they maintain that the Commissioner retains the power to fill gaps in the statute and determine which "investigative duties" constitute "detective duties", and that judicial deference is due the agency's reasonable interpretation of the statute's operative term and durational requirement (see, Matter of Moran Towing & Transp. Co. v New York State Tax Commn., 72 N.Y.2d 166, 173; Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 62 N.Y.2d 539, 545).
Notwithstanding the Legislature's failure to define the statute's operative term, we cannot agree that deference is due the Commissioner in the respects sought. Under the circumstances of this case, the Commissioner functionally seeks to draw discrete classifications and, thus, to exert a legislative function, cutting directly against the purpose of the very statutory amendment at issue.
Appellants' argument is equally flawed because it contradicts the legislative history of the amendment. It was precisely because of the Police Commissioner's unbridled discretion in making such indefinite designations to the detective rank that the Legislature was repeatedly importuned to make changes to curtail that power and eventually interposed its policy choice (Mem in Support of Legislation, Bill Jacket, L 1990, ch 755). In matters of statutory construction, "legislative intent is `the great and controlling principle'", and our proper judicial function is to "discern and apply the will of the Legislature" (Matter of Sutka v Conners, 73 N.Y.2d 395, 403).
The claim of a distinction between the terms "investigative duties" and "detective duties" in the interpretation of section 14-103 (b) (2) is also unavailing. The legislative history of chapter 755 demonstrates that the terms were used interchangeably (see, Mem in Support of Legislation, Bill Jacket, L 1990, ch 755 [stating that morale will suffer "if a police officer is required to perform investigative duties side-by-side with a detective without there being any mandatory period after which time he (or she) must be re-designated as a detective" (emphasis added)]; Budget Report on Bills, Bill Jacket, L 1990, ch 755 [stating that one of the arguments in support of the bill is that "work performed by police officers assigned investigative *215 duties * * * and detectives * * * is not * * * distinguishable" (emphasis added)]). For all these reasons, we reject appellants' appeal and are not persuaded by the views expressed by the dissenting opinion. Thus, we affirm the lower courts' determination.
We note, too, that appellants' claim that section 14-103 (b) (2) violates the Merit and Fitness Clause of the New York Constitution (art V, § 6) is not properly before this Court and agree unanimously that the issue should not be decided here. To be sure, the claim was pleaded, but appellants abandoned this argument in the lower courts and did not advance it before us (contrast, Matter of Wood v Irving, 85 N.Y.2d 238 [decided today, on constitutional grounds only, involving a parallel statutory mechanism applicable solely outside New York City]). Moreover, under the procedural circumstances presented here, we all agree it would not be prudent or appropriate to recognize and determine such an issue at the urging solely of an amicus curiae.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
SIMONS, J. (dissenting).
Prior to the enactment of section 14-103 (b) (2) of the Administrative Code of the City of New York, detective assignments in the New York City Police Department embraced a variety of investigative and administrative duties. Because the amendment by its terms provides that a police officer temporarily assigned to the duties of a detective shall, whenever such assignment exceeds 18 months, be appointed detective, the Department undertook a study of the various duties being performed by its detectives to determine which assignments provided the Department with the best opportunity to assess competence for detective duties within the 18-month period. As a result of that study, the Commissioner issued Interim Order 61, providing that only officers assigned to those specific commands primarily involving investigative rather than administrative duties would come within the scope of the amendment.
The majority concludes that Order 61 is void and that all police officers temporarily assigned as detectives for a period of 18 months as of the date of the statute's enactment, regardless of the duties performed during that period, were entitled to permanent appointment. The Commissioner contends that the statute was not intended to determine what are *216 and what are not detective duties: it was intended to remedy the problem of indefinite appointments. He notes that the statute does not identify the duties of a detective and contends that he, as the administrative head charged with implementing the statute, is entitled to reasonably define and limit those duties which qualify appointees to become permanent detectives. We agree.
The legislative history makes clear that the 1990 amendment to the Administrative Code was enacted to remedy a specific abuse: the widespread practice of assigning police officers to perform for long periods the same duties as detectives, but never endowing them with either the title or the emoluments of the detective position. Indeed, the memorandum in support of the legislation, relied on by the majority (see, majority opn, at 214), addresses the failure to appoint those performing detective duties and states that the practice sought to be corrected was abusive because it undermines "the spirit and intent of th[e] philosophy" underlying the career path concept. The statute speaks only generally of detectives' duties, without defining them, and nothing in the history preceding its enactment indicates that the Legislature also sought to curtail the discretion traditionally exercised by the Police Commissioner of the City of New York to determine what assignments make up the "career path" from patrol officer to detective in the NYPD.
Identifying and assigning responsibilities for the various ranks in the police department is a matter requiring experience and expertise in the field of law enforcement and since nothing in the statute attempts to define the duties of a detective, the Commissioner, the administrator obliged to appoint those who will become detectives by operation of law after the passage of 18 months, should have the discretion to determine the duties which will fairly test officers' qualifications for permanent positions. Former Governor Cuomo acknowledged the desirability of reposing such discretion in the Commissioner when, upon vetoing an earlier version of the statute, he noted that requiring the Commissioner to evaluate an officer's performance after only six months "would reduce the flexibility the Police Commissioner needs to properly staff the Detective Division" (see, 1985 NY Legis Ann, at 349).
Thus, although the Commissioner must comply with the specified "durational requirements" of the amendment, as head of the agency charged with implementing section 14-103 *217 (b) (2) of the Administrative Code, in the absence of any definition or limiting provisions in the statute, he retains the discretion to define "detective duties" for the purposes of that section. Inasmuch as the classifications contained in Order 61 are reasonable and supported by a comprehensive study of the subject, the court should defer to the Commissioner's expertise and uphold the order (see, Matter of Teachers Ins. & Annuity Assn. v City of New York, 82 N.Y.2d 35, 41).
It may be argued that the Commissioner abused his discretion when he issued Interim Order 61, if the order's purpose was to circumvent the mandate of the Legislature, but petitioners did not assert a claim based on an abuse of discretion, and the issue is not properly before us today.
Order affirmed, etc.